**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ERIC LYNCH,**

                                        **Plaintiff,**

        **vs.**

                                                        **6:20-CV-604**
                                                        **(MAD/MJK)**

**TIMOTHY BLAISE, NATHAN PEARSON,**
**TED FOURNIER, and EDWARD JONES,**

                                        **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**GREENBERG TRAURIG LLP**            **JENNIFER M. GOMEZ, ESQ.**
54 State Street                              **CYNTHIA E. NEIDL, ESQ.**
6th Floor
Albany, New York 12207
Attorney for Plaintiff

**OFFICE OF THE NEW YORK**           **JENNIFER J. CORCORAN, AAG**
**STATE ATTORNEY GENERAL**           **MARK J. DOLAN, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Plaintiff commenced an action in state court on March 4, 2020, alleging that Defendants

City of Little Falls, Timothy Blaise, Nathan Pearson, Ted Fournier, Edward Jones, Chad Salis,

and Benjamin Skibinksi violated his constitutional rights to be free from excessive force and

deliberate indifference to his medical needs in violation of the Fourth Amendment. *See* Dkt. Nos.

1, 2. The allegations stem from Plaintiff's arrest on March 9, 2017. See *Dkt*. No. 2. Defendants

Skibinksi and the City of Little Falls removed the action to this Court on June 2, 2020. *See* Dkt.

No. 1. Plaintiff voluntarily dismissed Defendant Salis from the action on September 14, 2021.

*See* Dkt. No. 50. Defendants Skibinksi and the City of Little Falls were dismissed from the action

following the Courts' grant of their motion for partial summary judgment. *See* Dkt. Nos. 61, 62.

Accordingly, the issues remaining in the case are allegations of excessive force against Defendant

Pearson, failure to intervene against Defendants Fournier and Jones, and deliberate indifference to

medical needs against Defendants Pearson, Fournier, Jones, and Blaise.

Trial is scheduled to commence on September 30, 2024. *See* Dkt. No. 169. In

anticipation of trial, Plaintiff has moved *in limine* to (1) preclude evidence of the facts underlying

Plaintiff's arrest and convictions; (2) exclude a 911 audio recording; (3) preclude Rachael Huyck

from testifying;[1] and (4) preclude Ryan Seeley from testifying. *See* Dkt. No. 177. Defendants

responded in opposition. *See* Dkt. No. 186.

For the following reasons, Plaintiff's motion *in limine* is granted in part and denied in part.

## II. DISCUSSION

**A. Motions *in Limine***

A motion *in limine* enables the Court to make an advance ruling on the admissibility of

certain anticipated trial evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also*

*Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A court should exclude evidence on a

motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."

*Coleman v. Durkin*, 585 F. Supp. 3d 208, 212 (N.D.N.Y. 2022). Generally, all "[r]elevant

---

[1] During the Court's final pretrial conference held on September 24, 2024, counsel for Defendants
stated that they will not be calling Ms. Huyck as a witness at trial. As such, this aspect of
Plaintiff's motion *in limine* is denied as moot.

evidence is admissible" unless otherwise provided by an Act of Congress, the United States Constitution, or the Federal Rules of Evidence. FED. R. EVID. 402. For instance, Rule 403 grants "the trial court broad discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of confusion of the issues or if it would be needlessly cumulative." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir. 1989) (citing FED. R. EVID. 403; *United States v. Carter*, 801 F.2d 78, 83 (2d Cir. 1986); *United States Martinez*, 775 F.2d 31, 37 (2d Cir. 1985)). Courts considering motions *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). The Court is also "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41-42.

### 1. Timeliness

Defendants first argue that Plaintiff's motion is untimely and should not be considered by the Court. *See* Dkt. No. 186 at 10.

As explained by Defendants, this matter was originally scheduled for a jury trial before District Judge David N. Hurd. *See id.* at 9. On November 16, 2023, Judge Hurd scheduled the trial for March 5, 2024. *See* Dkt. No. 149. Defendants moved *in limine* for the following relief: (1) to cross examine Plaintiff about the essential facts of his criminal convictions; (2) to introduce an audio recording of the 911 and dispatch calls that occurred prior to Plaintiff's arrest; and (3) to preclude evidence of indemnification. *See* Dkt. No. 156-2. Specifically, Defendants sought to introduce evidence of Plaintiff's convictions for Burglary of a Dwelling with a Deadly Weapon, Attempted Burglary of a Dwelling with a Deadly Weapon, and Criminal Mischief Second, all of

which were a result of Plaintiff's arrest on March 9, 2017. *See id.* at 3. Defendants argued that introduction of Plaintiff's convictions and his ultimate sentence were appropriate to introduce for credibility purposes. *See id.* at 6. Defendants also sought to introduce "a thirty-four minute and sixteen second (34:16) audio file containing 911 calls with Rachael Huyck and several dispatch calls between 911 operators and law enforcement personnel." *Id.* at 6. Defendants asserted that their intended "purpose in introducing this audio file is to show the non-hearsay state of mind of the responding officers immediately prior to Plaintiff's arrest that is THE subject of this action." *Id.*

Plaintiff opposed Defendants' motion. *See* Dkt. No. 164. Plaintiff "incorporate[d] by reference Plaintiff's Trial Memorandum, and the arguments made therein." *Id.* at 1 n.1 (citing Dkt. No. 155). Plaintiff first argued that evidence of Plaintiff's convictions should be excluded because they serve no legitimate purpose. *See id.* at 2. In a footnote, Plaintiff stated that "[t]o the extent the Court rules in Plaintiff's favor, and excludes evidence of the convictions, Mr. Lynch respectfully requests that all testimony and evidence relating to the events prior to the arrest also be excluded . . . ." *Id.* at 2 n.2. Plaintiff then asserted that the 911 call from Ms. Hyuck should not be permitted because it is "highly inflammatory." *Id.* at 6. Plaintiff also argued that Ms. Hyuck and Mr. Seeley should not be permitted to testify at trial because their testimony would be unduly prejudicial. *See id.* at 7-9. In Plaintiff's trial brief, he argued that evidence of his criminal convictions or other lawsuits should be precluded, and that a jury instruction on qualified immunity is not warranted. *See* Dkt. No. 155.

On February 27, 2024, Judge Hurd issued an Order ruling on Defendants' motion *in limine*. *See* Dkt. No. 167. Judge Hurd first granted Defendants' request concerning Plaintiff's criminal convictions and permitted Defendants to cross examine Plaintiff on the "[t]he 'essential

facts' of a [his] criminal conviction include[ing] only the 'statutory name of each offense, the date of conviction, and the sentence imposed[.]'" *Id.* at 4-5 (quotation omitted).  As to the thirty-four minute audio recording of the 911 call, Judge Hurd concluded that "[p]resenting the recording to the jury will waste valuable time if it is played in its entirety.  However, defendants may renew their request at trial to admit relevant portions of the audio recording as it pertains to the excessive use of force claim against them." *Id.* at 5 (footnote omitted).  Judge Hurd granted Defendants' request to preclude evidence of indemnification.  *See id.* at 6.  Finally, Judge Hurd discussed Plaintiff's request to exclude Ms. Huyck and Mr. Seeley's testimony.  *See id.*  Judge Hurd explained that "defendants have not made a motion in limine regarding the testimony of these witnesses. . . .  Therefore, plaintiff's arguments will not be considered at this time.  Plaintiff may renew his request to exclude this testimony at trial, if relevant." *Id.*

Plaintiff did not seek reconsideration of Judge Hurd's decision.  When the case was reassigned to the undersigned, the Court issued a jury trial notice.  *See* Dkt. No. 169.  As part of that notice, the Court set deadlines for motions *in limine* and responses thereto.  *See id.*  The Court did not limit the permissible scope of the parties' motions.  *See id.*  Nevertheless, insofar as Plaintiff's present motion *in limine* reiterates arguments and issues previously raised and addressed by Judge Hurd, the Court will not reconsider them.  *See Jackson v. Jimino*, 506 F. Supp. 2d 105, 108-09 (N.D.N.Y. 2007) ("Generally, reconsideration of a court's prior decision is warranted only where the moving party demonstrates '(1) an intervening change of controlling law; (2) the availability of new evidence; and/or (3) the need to correct a clear error or prevent manifest injustice'") (quotation omitted).

As to evidence of Plaintiff's convictions, Plaintiff argues that the underlying facts of Plaintiff's arrest and convictions should be excluded.  *See* Dkt. No. 177 at 3.  Although Plaintiff

raised this argument in a footnote of her opposition to Defendants' motion *in limine*, it does not appear to be addressed in Judge Hurd's decision. *See* Dkt. No. 164 at 2 n.2; Dkt. No. 167. The Court will therefore address the merits of this argument. As to the arguments concerning the audio recording of the 911 call, Judge Hurd explicitly ruled on this issue, concluding that Defendants may not introduce the entire recording, but could renew their request to introduce portions of the recording at trial. *See* Dkt. No. 167 at 5. Plaintiff has not argued that this decision requires reconsideration. *See* Dkt. No. 177 at 6-7. As such, the Court will not reconsider Judge Hurd's decision and will reiterate the conclusion that Defendants may not play the entire thirty-four-minute recording for the jury, but may seek to introduce relevant portions during trial. The Court will listen to the proffered portions outside the presence of the jury and make a ruling at that time as to admissibility. As to the testimony of Ms. Huyck and Mr. Seeley, Judge Hurd did not address the merits of this issue in his decision because neither party moved *in limine* regarding the testimony. *See* Dkt. No. 167 at 6. Because the merits of this have not been previously addressed, and the issues concerning the testimony are largely intertwined with the arguments about evidence of the facts leading to Plaintiff's arrest, the Court will address these issues.

### 2. *The Facts Leading to Plaintiff's Arrest and Convictions, Including Through Presentation of Non-Party Witness Testimony*

In March 2017, Plaintiff was in a relationship with Ms. Huyck. *See* Dkt. No. 186 at 6. Plaintiff went to Ms. Huyck's home, where she and her children were residing. *See id.* Ms. Huyck denied Plaintiff entry into her home and an altercation ensued. *See id.* One of the three children ran next door to Mr. Seeley's home to ask for help. *See id.* Mr. Seeley went to Ms. Huyck's home, and the three adults continued to engage in a verbal and physical altercation. *See*

*id.*  Plaintiff left, only to return carrying a hunting rifle.  *See id.* at 6-7.  Plaintiff fired two shots at the door behind which Ms. Huyck, Mr. Seeley, and the children were hiding.  *See id.* at 7.  During these events, Ms. Huyck called 911 multiple times.  *See id.*  Defendant Pearson and Fournier responded to the calls.  *See id.*[2]  When Plaintiff was ordered to get on the ground and put his hands on his hand, he complied.  *See id.* at 8.[3]  This is where the factual disputes begin.  *See id.*; *see also* Dkt. No. 177 at 2.  Plaintiff alleges that Defendants used excessive force in arresting Plaintiff, whereas Defendants assert they did not.  *See* Dkt. No. 186 at 8; Dkt. No. 177 at 2.

It is the content of Ms. Huyck's calls to 911 that Defendants seek to introduce as well as Mr. Seeley's testimony to explain the facts leading to Plaintiff's arrest.  Defendants anticipate "that Mr. Seeley will testify as to his interactions with and observations of Plaintiff on the morning of March 9, 2017, including his physical altercation with Plaintiff prior to the arrival of [the police]." Dkt. No. 182 at 2.  Defendants argue that "the totality of the facts and circumstances leading to Plaintiff's arrest are critical to the jury's determination of the reasonableness of the Defendants' actions."  Dkt. No. 186 at 16.  "This includes their knowledge of the situation as they are approaching the scene of the crime.  Each of the respondent Trooper Defendants will testify that they relied on the dispatch operators communications to have an understanding of the situation. This also includes Investigator Jones' call in to the 911 dispatch that he observed Plaintiff outside the residence with a hunting rifle."  *Id.* at 16-17.  Defendants contend that Mr. Seeley's testimony is not only relevant to the reasonableness of Defendants' actions insofar as he yelled to the police

---

[2] In their trial brief, Defendants contend that "Plaintiff eventually exited the basement, placed the hunting rifle in the kitchen of one of the apartments and exited the back door." Dkt. No. 184 at 4. In their response to Plaintiff's motion *in limine*, Defendants assert that "Plaintiff exit[ed] the front door of one of the apartments carrying a hunting rifle equipped with a scope." Dkt. No. 186 at 7.
[3] Because Plaintiff argues that all of his pre-arrest conduct is irrelevant to his excessive force claim, his trial brief's statement of facts begins with his compliance.  *See* Dkt. No. 174 at 2.

that Plaintiff was shooting inside the residence where children were present, but he was also an eyewitness to Plaintiff being taken into custody. *See id.* at 19.

Plaintiff argues that any "testimony, documents, photographs, recordings and other evidence regarding physical injuries he caused to Ms. Huyck or Mr. Seeley," "testimony and evidence relating to what Ms. Huyck's children or other neighbors saw or heard prior to Mr. Lynch being arrested," "[p]hotographs of the crime scene or property damage," and "[a] videotaped 'interview' by Defendant Blaise of" Plaintiff should all be excluded as unduly prejudicial. Dkt. No. 177 at 4. The Court agrees, in part, with both parties.

"'The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest.'" *Moore v. Keller*, 498 F. Supp. 3d 335, 355 (N.D.N.Y. 2020) (quoting *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017)). "To succeed on a § 1983 excessive force claim, a plaintiff must show that the defendant's use of force was 'objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Id.* (quotation omitted). "'If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.'" *Id.* (quotation omitted).

In determining whether force was excessive, the inquiry is an objective one that "requires balancing the *Graham* factors, which include (1) the nature and severity of the crime leading to [the] arrest; (2) whether [the Defendant] posed an immediate threat to the officers or others; and (3) whether [the Defendant] was fleeing or actively resisting arrest." *Smith v. Sawyer*, 435 F. Supp. 3d 417, 438 (N.D.N.Y. 2020) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). These considerations are viewed "'from the perspective of a reasonable officer on the scene, rather than

with the 20/20 vision of hindsight.'" *Id.* at 433 (quoting *Jones v. Parmley*, 465 F.3d 46, 61 (2nd Cir. 2006)).

Finally, the "standard of relevance established by the Federal Rules of Evidence is not high." *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985). Rule 401 defines relevant evidence as evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. FED. R. EVID. 401. Under Rule 403, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. "Evidence is cumulative when it replicates other admitted evidence, and the exclusion of relevant, but cumulative, evidence is within the discretion of the trial court." *United States v. Jamil*, 707 F.2d 638, 643 (2d Cir. 1983) (citing *Hamling v. United States*, 418 U.S. 87, 127 (1974)).

The information provided to Defendants concerning Plaintiff's actions leading to his arrest, particularly his possession of a firearm and his heightened emotional state, are relevant to "the nature and severity of the crime leading to [the] arrest" and the determination of "whether [the Defendant] posed an immediate threat to the officers or others." *Smith*, 435 F. Supp. 3d at 438. As such, the portions of the recording from the 911 calls relating to those factors are relevant to Defendants' knowledge. *See Mathis v. Best*, No. 2:99-CV-111, 2002 WL 1578768, *2 (S.D. Ohio July 2, 2002) ("Plaintiff's pre-arrest conduct, *i.e.*, that Plaintiff appeared intoxicated out of control and violent with Officer Best, is clearly probative of the issue in this case—whether Defendant used excessive force against Plaintiff").

Defendants assert an additional purpose for Mr. Seeley's testimony: he observed Plaintiff being taken into custody. *See id.* at 19. This information is, of course, relevant to the determination of whether Defendants used excessive force.

However, the probative value of the details of all of Plaintiff's conduct leading to his arrest is insufficient to outweigh the prejudicial effect of such evidence. For example, the Court finds minimal probative value in testimony that Ms. Huyck and her children were scared for their lives, or in the details of Plaintiff's physical assault on Ms. Huyck. *See Ridge v. Davis*, 639 F. Supp. 3d 465, 480 (S.D.N.Y. 2022) ("Defendants may introduce evidence showing that Plaintiff had, or thought he had, an active warrant for his arrest on the date of the incident. . . . However, no evidence will be permitted of the subject, substance, or background of the warrant. Evidence of the temporary restraining order sought by Ms. Grant, as well as evidence of any domestic disputes between Plaintiff and Ms. Grant, will not be allowed").

Plaintiff's motion *in limine* is granted in part and denied in part. Defendants may present evidence concerning the information Defendants had prior to arriving at the scene that is relevant to their conduct, such as Plaintiff being armed with a weapon. The Court will also permit Mr. Seeley's testimony insofar as his testimony concerns Plaintiff being taken into custody. Otherwise, the testimony and evidence of Plaintiff's pre-arrest conduct may not be introduced.

Based on the foregoing, Plaintiff's standing objection to "relevance to [Mr. Seeley] and the witness testimony in addition to prejudice" is overruled. Dkt. No. 177-1 at 14. However, although the Court disfavors standing objections and Plaintiff's counsel did not object throughout Mr. Seeley's testimony, the Court has thoroughly reviewed the transcript and Plaintiff's present motion *in limine* and makes the following ruling regarding the admissibility of Mr. Seeley's testimony: the Court sustains Plaintiff's objection to Mr. Seeley's testimony insofar as his

testimony goes beyond the scope of the issues for trial and is therefore irrelevant, any probative value is substantially outweighed by prejudicial effect, it is hearsay, and/or it is speculative.

Accordingly, the following portions of Mr. Seeley's testimony will not be permitted:[4] page 20, lines 6-23, until counsel asks, "What did you do?"; page 30, lines 13-18; page 31, lines 9-11; page 32, lines 11-13, 16-19, 24-25; page 33, lines 8-13, 25, except for "No, sir"; page 34, lines 2-18, 21-24, which may restart with "Again, got him into a headlock and pulled him off of her" but must then exclude the remainder of line 25 through page 35, line 4, to restart with "So he went down onto the ground, face first"; page 35, lines 6-11, 14-22 which can include the statement that Mr. Seeley told Plaintiff that the police had been called and would be arriving shortly; page 38, lines 19-20; page 39, lines 14-23, to begin again with "I looked"; page 40, line 11 through page 52, line 19; and page 52, lines 22-23.

### 3.  *Plaintiff's Video Interview*

Plaintiff argues that a videotaped interview and voluntary statement of Plaintiff and taken by Defendant Blaise should be excluded because Plaintiff was not "properly mirandized or adequately informed of his rights."  Dkt. No. 177 at 5.  Plaintiff contends that "[b]ecause the interview and statement were not admissible in his criminal trial, they should not be admissible in this trial."  *Id.* at 6.  Defendants first argue that Plaintiff's *Miranda*[5] argument has already been rejected by this Court.  *See* Dkt. No. 186 at 15 (citations omitted).  Defendants then assert that the video is relevant to showing "Plaintiff's physical condition less than an hour after his arrest.  The video is relevant and probative of Plaintiff's physical condition and alleged injuries in the immediate aftermath of the incident."  *Id.* at 16.

---

[4] For purposes of this specific ruling, the Court's citations are to the pagination in the top right corner of the transcript, and not those generated by CM/ECF.
[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Defendants are correct that on March 14, 2022, District Judge Lawrence E. Kahn rejected Plaintiff's argument concerning Plaintiff's *Miranda* rights because "a failure to provide a Miranda warning is not cognizable under § 1983." Dkt. No. 61 at 3; *see also Vega v. Tekoh*, 597 U.S. 134, 149 (2022) ("[A] violation of Miranda does not necessarily constitute a violation of the Constitution, and therefore such a violation does not constitute 'the deprivation of [a] right . . . secured by the Constitution'") (quotation omitted). As Defendants state, some courts have concluded that "'[t]he results of interrogation without *Miranda* warnings are admissible in civil cases.'" *United States v. $128,915.00 U.S. Currency*, No. 3:20-CV-00667, 2022 WL 3100636, *4 (S.D. Ill. Aug. 4, 2022) (quoting *Hanson v. Dane Cnty.*, 608 F.3d 335, 339 (7th Cir. 2010)); *Kyles v. Baker*, 72 F. Supp. 3d 1021, 1033 n.3 (N.D. Cal. 2014); *see also* Dkt. No. 186 at 15. Plaintiff does not present any legal authority to support his argument that because the video was excluded at this criminal trial, it must be excluded, here. *See* Dkt. No. 177 at 5-6.

As to Defendants' relevance argument, the Court has not been provided with the video. As such, it cannot determine whether it is relevant to Plaintiff's alleged physical condition immediately after his arrest. The Court reserves ruling on this issue until it can view the video outside the presence of the jury.

### III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Plaintiff's motion *in limine* (Dkt. No. 177) is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  September 26, 2024
       Albany, New York

Mae A. D'Agostino
U.S. District Judge